UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, as Next Friend of Mary Doe, a Minor, | ) | |
| and Jane Doe on her own behalf, | ) | |
| | ) | Case No.: |
| Plaintiffs, | ) | |
| | ) | **PLAINTIFFS DEMAND** |
| vs. | ) | **TRIAL BY JURY** |
| | ) | |
| WENTZVILLE R-IV SCHOOL DISTRICT, | ) | |
| Serve:        Dr. Curtis Cain, Superintendent | ) | |
|                   280 Interstate Drive | ) | |
|                   Wentzville, MO  63385 | ) | |
| and | ) | |
| | ) | |
| LAURIE BERRY, Director and Coordinator for Special | ) | |
| Education of the Wentzville R-IV School District, both | ) | |
| Official capacity, and Individually | ) | |
| Serve at:        280 Interstate Drive | ) | |
|                    Wentzville, MO  63385 | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

COME NOW Plaintiffs, by and though counsel, and for their cause of action against

Defendants, states as follows:

NATURE OF THE ACTION

In this action, Plaintiffs bring claims for personal and physical injuries to the minor

Plaintiff Mary Doe.  Mary is an autistic child, with many other developmental disabilities.  While

attending school, and during school hours, she was raped twice.  In the first instance, a male

student drove her off the school campus during lunch hour, and committed the rape at a residence

where he left her.  In the second instance, fifteen (15) months later, she was raped in the girls'

restroom at school.

This Complaint brings five (5) federal statutory and constitutional claims.  Plaintiffs also each bring the pendent state law claims for negligent infliction of emotional distress.

JURISDICTION AND VENUE

1.     Count I of this action arises under Title IX of the Civil Rights Act of 1964 and Education Amendments Act of 1972; Count II is brought under the Americans with Disabilities Act of 1990; Count III is brought under the Rehabilitation Act of 1973; Count IV is brought under 42 U.S.C. § 1983 for violation of the Ninth and Fourteenth Amendments to the United States Constitution; and, Count V is brought pursuant to 42 U.S.C. § 1983 for failure to supervise.  The Court has jurisdiction over Counts I through V pursuant to 42 U.S.C. § 1331. Counts VI and VII are brought under Missouri common law which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[1]

2.     Venue is proper before this Court as the unlawful acts committed occurred in St. Charles County, State of Missouri, pursuant to 28 U.S.C. Section 1391.

PARTIES

3.     Plaintiff Jane Doe is the biological grandmother and legal guardian of Plaintiff Mary Doe, born in 2006.  At all times relevant herein, Plaintiffs were citizens of the United States, and residents of St. Charles County, Missouri.

4.     Defendant Wentzville R-IV School District (hereinafter "Defendant") is an educational institution located in St. Charles County, Missouri, and at all times herein, Defendant received Federal financial assistance.  Defendant's acts and omissions as alleged herein were

---

[1] An eighth count will be added under the Missouri Human Rights Act, RSMo. § 213.010 et. seq. for disability discrimination, also seeking compensatory damages and punitive damages against the District.  A Charge of Discrimination was filed with the Missouri Commission on Human Rights simultaneously to the filing of this suit. Plaintiffs are required to wait 180 days to receive their Notice of Right to Sue letter before the claim can be brought.

committed by employees acting in the scope and course of their employment, under color of law, and pursuant to official custom, policy and practices.

5.     Defendant Laurie Berry is the Director and Coordinator for the Special Education Services of the Wentzville R-IV School District, also located in St. Charles County, Missouri.  She is sued in both her official capacity and individually.

STATEMENT OF FACTS

About Jane Doe

6.     Jane Doe (hereinafter "Jane") became the legal guardian of Mary Doe (hereinafter "Mary") on November 21, 2019, at the age of sixty-four (64).  Jane's son is the biological father of Mary.  Jane became the legal guardian of Mary by the consent of Mary's parents.

7.     Jane has been divorced, with three (3) adult children, and seven (7) grandchildren. She has been remarried for the past eighteen (18) years.

8.     Jane had no specialized education, training or experience in rearing or educating a child with disabilities such as Mary's, when she became Mary's legal guardian.  She was just a grandmother, and Mary's last chance to remain with family.

About Mary Doe and Her Disabilities

9.     Mary was born in January 2006.  At the age of three (3), she was diagnosed with autism by the Easter Seals Foundation.  She had missed the childhood milestones of walking and talking.

10.     Mary's parents separated when Mary was five (5) years old.  Mary's father, Jane's son, left in calendar year 2011, and a divorce decree was entered in 2013.  He now has two (2) children from another relationship, and he rarely exercised visitation with Mary.

11.     From her parents' separation in 2011, up to the legal guardianship giving legal and physical custody of Mary to Jane in 2019, Mary lived with her mother in St. Louis County.

12.     Mary attended school at the Pattonville School District, but always with a special education teacher and counselor from the Special School District of St. Louis County.

13.     Mary's diagnosed disabilities are Autism, Attention Deficit Hyperactivity Disorder ("ADHD"), Obsession Compulsive Disorder ("OCD"), Congenital Hypotonia, Static Encephalopathy, Mood Disorder with problems with transitions, Depression, Tourette's Syndrome, and Absence Seizures (silent seizures – staring into space for long periods of time).

14.     Throughout her educational experience, Mary's disabilities qualified her for an Individualized Education Program ("IEP") or 504 Plan.

15.     In Mary's IEP's, including those with Defendant Wentzville R-IV School District, her disabilities are specifically stated, in addition to how those disabilities impact her participation in education.  In Mary's IEP with Defendant, it is explained this way:

> "("Mary") has an educational diagnosis that meets the eligibility criteria for Educational Autism and Other Health Impairment.  ("Mary")'s Educational Austism impacts her participation in the general education curriculum in the following ways:  ability to carry on a reciprocal conversation with an unfamiliar person, ability to solve conflict with language, reading comprehension, interpreting nonverbal language and the intention of others, and the ability to see the overall picture.  ("Mary") is highly verbal, but lacks awareness of social rules and expectations.  ("Mary") has a tendency to be rigid with her routine and has difficulty with a change in her schedule.  ("Mary") also demonstrates sensory seeking behaviors that include chewing on her pencil and her shoes have to be just right.  She also demonstrates an aversion to clothing tags, shoe laces, and loud sounds.  ("Mary")'s Other Health Impairment impacts her task focus skills and self-control within the classroom setting."

16.     Mary's disabilities, both in the educational setting and at home, mean she can never be left alone or unsupervised.  She does not understand or appreciate social rules, risks and dangers.

4

17.     For instance, between September 2017 and December 2019, Mary was cited twenty-three (23) separate times for violations of the student code of conduct while at Pattonville School District.   She was cited for multiple instances of inappropriate language, disruptive conduct, and insubordination.

18.     In one instance on April 12, 2018, Mary's mom took her back to the Pattonville School District after school had let out, to steal shoes from the lost and found locker.  Another student had reported his shoes missing to the school resource officer, and that the student had seen Mary wearing them.  When confronted, Mary readily admitted what she did, and further admitted that she had stolen from the locker three (3) other times after school hours – taking a bag with leggings, a lunch box, and a black coat.  Mary saw nothing wrong in her conduct, and that she was only doing what her mom told her to do.  Mary's mom got arrested.

19.     In another instance, shortly after being in the custody of Jane, Mary was at home with Jane's husband.  The husband left the residence to run a very short errand, leaving Mary alone.  When the husband returned, the house was filled with smoke.  Mary had cooked a chicken breast on the stove, and left the stove on with a spatula in the pan. Mary was completely oblivious to the house filled with smoke.

20.     The practical impact of Mary's disabilities are that she will never obtain a driver's license, be capable of independent living, or experience life without constant supervision.

<u>The Transition from the Special School District of St. Louis County<br>to Defendant Wentzville R-IV School District</u>

21.     When Jane obtained legal guardianship of Mary, it was near the end of the first semester of the eighth grade.  Jane resided in St. Charles County, and did not remove Mary from Pattonville School District until the end of the semester in December 2019.

22.     Jane registered Mary to complete the eighth grade with Defendant Wentzville R-IV School District's middle school, beginning in January 2020.

23.     Prior to Mary's transfer, Jane met with Mary's counselor from the Special School District.  The counselor explained to Jane that St. Charles County does not have a special school district, and that they are going to ignore Mary's IEP.  The counselor impressed upon Jane to tell Wentzville R-IV School District's staff that they have got to constantly be supervising Mary.

24.     When Jane met with the middle school representative, she did impress upon her that Mary absolutely could not be left unmonitored, and explained in simple terms, "You have got to keep eyes on her."  The representative said she understood.

25.     Mary had only attended the middle school for ten (10) weeks when the COVID shut down came into place in March 2020.  Mary did graduate from middle school, and was set to begin at Holt High School in the fall of 2020.

<u>Organized Special Education Compared to Defendant Wentzville R-IV School District</u>

26.     Mary's education between 2011 and 2019 was at the Pattonville School District located in St. Louis County, but always in conjunction with the Special School District of St. Louis County.

27.     The Special School District provides special education services to children in 265 schools in twenty-two (22) public school districts in St. Louis County.  In addition, they operate five (5) special education schools for children whose disabilities prevent them from attending mainstream education in a normal setting.

28.     The goal of the Individuals with Disabilities Education Act is to always educate children in the least restrictive environment.  To that end, the Special School District provides teachers, counselors, and specialized staff known as "paraeducators" inside of the 265 schools.

29.     Paraeducators, like paramedics and paralegals, have acquired special education. Paraeducators are required to have a minimum of an associate's degree, and are frequently employed within school districts to aid children, like Mary – to keep them focused on tasks and constantly monitor them physically for their own safety.  They have existed since 1997.  They are tailor-made and uniquely suited for Mary's disabilities, functionally attached at the hip to the student, and yes, even in the restrooms.

30.     That same model exists immediately to the east in the State of Illinois, in the Belleville Area Special Services Cooperative ("BASSC").  There, BASSC operates one (1) campus for children whose disabilities are too severe to be taught mainstream.  Separately, BASSC provides special education services to twenty-three (23) regional school districts.

31.     In St. Charles County, where Defendants are located, there is no specialized organization to the school districts for students with disabilities.  Each school operates independent of the others.

32.     Because of the lack of organization in St. Charles County, there exists a not-for-profit organization known as Family Advocacy and Community Training ("FACT").  FACT was founded in 1988 by two (2) very angry, and understandably so, mothers of children with autism whose children were attending schools in St. Charles County.

33.     FACT provides advocacy services to parents of children with disabilities who are familiar with the implementing regulations of the Individuals with Disabilities Education Act ("IDEA"), and the regulations of the Missouri Department of Elementary and Secondary Education ("DESE").  The advocates know what the children are entitled to, what services are capable of being provided by the districts, and frequently attend IEP meetings between the parents and the school districts.

34.    A FACT advocate became involved in this case too late to demand a paraeducator to prevent the first rape of Mary, and would be completely ignored in preventing the second rape.

<u>The First Rape</u>

35.    On September 11, 2020, Mary was fifteen (15) years old, and was attending Holt High School, operated by the Defendants.

36.    On that day, she attended her morning, one (1) hour classes for band, physical science, English, and P.E.  She was last seen by school officials and staff after P.E. finished at 11:00 a.m.

37.    Mary had lunch hour, followed by three (3) additional classes scheduled for the afternoon, with each of those four (4) time periods that were supposed to be monitoring Mary. All four (4) of the individual staff members failed to notice and report that Mary was missing, despite the classroom teachers having routine and mandatory attendance requirements.

38.    At approximately 5:00 p.m., Jane received a phone call from the coach of the color guard asking where Mary was.  A football game was scheduled that evening, and Mary was in the color guard.

39.    Jane was at the football stadium desperately looking for Mary, and eventually approached an officer of the Wentzville Police Department just before 6:00 p.m.

40.    The Wentzville Police Department then located Mary at 9:30 p.m. at a residence located two (2) miles from school.

41.    Jane met with the police and Mary.  Mary's blouse was on inside-out, her underwear was in her backpack, and she had alcohol on her breath.

42.     That night, Jane refused to let Mary bathe or take a shower, and the next morning took her to St. Louis Children's Hospital to be examined for sexual assault.  The physician confirmed the sexual assault.

43.     The Wentzville police determined who the student was that raped Mary, and that he attended Holt High School.

44.     On October 8, 2020, an interview was scheduled of Mary by a counselor for the purposes of pursuing criminal charges against the boy that raped her.  The counselor and Mary were located in one (1) room; a Wentzville police officer, an Assistant Prosecuting Attorney, and Jane were in another room observing by video camera.  For the 15-20 minutes that the interview lasted, Mary only cried.

45.     Counseling services were then provided to Mary and she was diagnosed with post-traumatic stress disorder.  That counselor then referred Jane to FACT.

46.     Between the time of being raped and April of the following year, Jane kept Mary out of attending Holt High School because the boy who raped her was still there.  Mary received home bound education.

47.     In May 2021, Mary returned to attending school at North Point High School, also operated by Defendants.

48.     On December 6, 2021, an IEP meeting was convened.  Mary's special education teacher, Susan Miller, was present, along with Jane, the FACT advocate, and the school district's IEP team.  It was the opinion of Susan Miller and the entire IEP team that Mary's continuing poor performance and behavior was the result of the rape that had occurred on September 11, 2020.

49.    In that same meeting, Jane and the FACT advocate requested, as they had in the past, that a paraeducator be provided to Mary for both her safety and support.  The Defendants refused.

The Second Rape

50.    On November 18, 2021, Jane sent a letter to Mary's high school assistant principal at North Point High School.  Jane and her FACT advocate believed that because of Mary's on-going behavioral problems, the Defendants needed to specifically restrict Mary's access on her school provided ChromeBook from all means of communicating with other students.  The letter pleaded with the principal to set up "firewalls" to prevent anything from happening.

51.    The Defendants did not restrict Mary's access.

52.    On January 27, 2022, Mary's annual IEP meeting was convened.  Again, Jane, her FACT advocate, the entire IEP team, and Defendant Laurie Berry were present.  In that meeting, Plaintiff and her advocate again asked for a paraeducator to be assigned to Mary.  That request was again denied.

53.    Defendant Berry specifically addressed the issue of Mary's safety, and the reason no paraeducator was necessary.  Defendant Berry said, "We've got eyes on her from the time she gets off the bus until the time she gets back on the bus."

54.    No reason at all existed why Mary had not been provided a paraeducator either then or any time before.  The only catch was that a paraeducator costs money, and Defendants did not want to spend it on Mary.

55.    The very next day, on January 28, 2022, Mary was raped in the girls' restroom at North Point High School by an older student, who was also autistic.

56.     Defendants did not report the incident to the Wentzville Police Department. According to them, Mary had consented and arranged to have sex with the student on her ChromeBook.  They also expressed the belief that because Mary had just turned sixteen (16) on January 28, 2022, it was not a criminal act.

57.     That opinion of the Defendants was complete nonsense.  While Mary can certainly say "yes", she no more has the capacity to consent to sexual acts than a five (5), ten (10), or fifteen (15) year old – even those without mental disabilities.  Moreover, any decision to commence a criminal prosecution is a discretionary decision for prosecuting attorneys only, not school administrators.  School administrators and staff are legally mandated reporters under Missouri law (RSMo. § 210.115), and that legal duty was completely ignored.

58.     After a number of days passed, Jane contacted the Wentzville Police Department to report the incident.  The report reflected what Jane had been told by the school district regarding "consent".  That incident report also made no reference that it was supplemental to an existing report, or that the matter had already been reported.

<u>A Pointless School Suspension, Needless Manifestation Hearing, and then,</u>
<u>Ultimate Surrender</u>

59.     On February 1, 2022, it was the decision of Defendants to suspend Mary from school for a period of ten (10) days because of the rape, as a violation of the Student Code of Conduct.

60.     The Defendants then scheduled what is known as a "Manifestation" determination hearing.  Under the IDEA, school districts can only suspend an IEP student for more than ten (10) days and/or expel a student if a "manifestation" hearing is held.  In the hearing, the IEP team decides two (2) things:

(1)    Was the behavior caused by, or did it have "a direct and substantial relationship" to the student's disability; and

(2)    Was the behavior the direct result of the district's failure to implement the IEP?  (34 C.F.R. Sec. 300.530(e))

61.    If the IEP team answers either one of these questions "Yes", the student cannot be expelled. Defendants scheduled Mary's "manifestation" hearing on February 9, 2022.

62.    Jane's FACT advocate took the view that this hearing was a "no brainer".

63.    Prior to the hearing on February 9, Defendants cancelled the "manifestation" hearing, and said they would hold another IEP meeting on February 28, 2022.

64.    Between February 1 and February 28, 2022, Mary received no educational services from Defendants at all.

65.    On February 28, 2022, the IEP meeting was held with Jane, her FACT advocate, the IEP team and Defendant Laurie Berry.

66.    Instead of having an IEP meeting, Defendant Berry simply spoke, saying that, "We said we would keep her (Mary) safe, and we clearly failed at that task."  Defendant Berry then informed Jane that the school district would then pay for Mary to attend private school placement.

67.    The private school placement began April 12, 2022.  Defendants had conceded they were not capable of keeping Mary safe, and no longer wanted the responsibility of her presence in the district

Previous, Unprecedented Retaliation Against Parents Demanding IEP Services, then the Complete Flip-Flop of Providing Services, then Defaulting Again to Denying Services

68.    Before Mary began her education with Defendants, there was another.

69.    In calendar year 2011, another autistic girl began the third grade with Defendants.

70.     Referred to here as "Mary Ann", she had the disabilities of Autism, ADHD, Anxiety and Sensory Processing Disorder.  The parents of Mary Ann made repeated complaints to Defendants that Mary Ann's IEP and 504 Plan was not being followed.

71.     When the parents determined they were not going to get any cooperation from Defendants, they filed a complaint with the United States Department of Education, Office of Civil Rights ("OCR").  The parents had an absolute legal right to pursue that complaint.

72.     In response to the parents' OCR complaint, the attorney for the Defendants initiated what is known as a due process complaint with DESE.  The purpose of the attorney filing the complaint was to have DESE determine that Mary Ann was not entitled to special educational services.  Initiating that process defied all logic and legal precedent.  Mary Ann had an IEP, and she was entitled under the law to education addressing those disabilities.

73.     In the entire history of the IDEA, since 1975, no school district (or their attorney) had ever sought to deny special education benefits to a student through legal process where the student's IEP specifically allowed for it.

74.     As a consequence of the Defendants' attorney's legal action, Mary Ann's parents were forced to hire legal counsel.  The Defendants' attorney inundated Mary Ann's parents with discovery and depositions to the point where the parents had expended $30,000.00.

75.     Finally, the parents' attorney suggested to them that the only way to get the Defendants and their attorney to stop what was out of control, and no end in sight, was to drop the request for special education services for Mary Ann.  The parents did withdraw the requests, and removed their daughter from the school district and into private school.

76.     Because of the Defendants' actions in retaliating against Mary Ann and her parents for pursing OCR complaints, the parents initiated a lawsuit against Defendants under the Missouri Human Rights Act for disability discrimination and retaliation.

77.     That lawsuit was resolved in the parents' favor.

78.     Mary Ann's parents then returned her to Defendants' school district for high school.   They requested a paraeducator.   The Defendants gave them one without further discussion.

79.     In January 2020, Mary Ann was transitioning/graduating out of high school with Defendants.  In the same month and year, Mary, Plaintiff here, was transitioning into school.

80.     Defendants then, had only provided a paraeducator to Mary Ann as a result of litigation.  At the same time, Mary was being denied a paraeducator though the need was both the same as Mary Ann's, and obvious.

<u>Notice to Defendants of Student Sexual Assaults</u>

81.     Between calendar year 2011 and September 11, 2020 (the date of Mary's first rape), the Defendants' self reported, as mandated reporters, ninety-one (91) separate instances of student-on-student sexual assaults.

82.     In calendar year 2018, the U.S. Education Department, Civil Rights Data Collection Division, published that Missouri ranked second in the entire country for the number of rapes or attempted rapes in public schools.

83.     Also in 2018, the same report published that Missouri ranked tenth highest in the country for sexual assaults in public schools.

84.     In 2019, the U.S. Department of Justice published that statistically, children with disabilities are three to seven times more likely to become victims of rape and sexual assault than those without disabilities.

CLAIMS

## COUNT I
### Violation of Title IX of the Civil Rights Act of 1964 and Education Amendment Act of 1972
### (Plaintiff Mary Doe Against Defendant School District)

85.     Plaintiffs hereby incorporate by reference paragraphs 1 – 84, as though fully set forth herein.

86.     Plaintiff Mary was twice subjected to sexual rapes, during school hours, both on and taken from school grounds under the control of Defendant.[2]

87.     Defendant had actual and constructive notice of the presence and risks of peer-on-peer sexual assaults within its school district.

88.     Defendant failed and refused to take reasonable, preventable measures to prohibit the conduct against Mary.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

90.     As a direct and proximate result of Defendant's conduct, Plaintiffs have further

_____

[2] While this Complaint more than adequately pleads notice to Defendant of peer-on-peer sexual assaults within the District, each rape satisfies both the "notice" and "severe and pervasive" elements of a Title IX claim.  *S.S. by and through K.S. v. Raytown Quality School District*, 2021 WL 3557650 (U.S. District Court W.D. MO, Western Division) 08-11-2021 (Collecting cases of single severe sexual assault, and denying motion to dismiss on those two (2) grounds where a disabled student was left alone in a restroom by his paraeducator and raped.)

incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to the recovery of attorney's fees pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against Defendant Wentzville R-IV School District for actual and compensatory damages in the amount of $8,500,000.00, costs of this action, and attorney's fees pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1988.

**COUNT II**
**Violation of the Americans With Disabilities Act, 42 U.S.C. § 12182**
**(Plaintiff Mary Doe Against Defendant School District)**

91.     Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein.

92.     Plaintiff Mary at all times was an individual with qualified disabilities under the Americans with Disabilities Act.

93.     Defendant repeatedly failed and refused to address the needs of Plaintiff Mary's disabilities, endangering her physically, mentally and emotionally.

94.     As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

95.     As a direct and proximate result of Defendant's conduct, Plaintiffs have further incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to the recovery of attorney's fees pursuant to 42 U.S.C. § 12182.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against Defendant Wentzville R-IV School

District for actual and compensatory damages in the amount of $8,500,000.00, costs of this action, and attorney's fees pursuant to 42 U.S.C. § 12182.

**COUNT III**
**Violation of 29 U.S.C. § 504 of the Rehabilitation Act of 1973**
**(Plaintiff Mary Doe Against Defendant School District)**

96.     Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein.

97.     Plaintiff Mary at all times was an individual with qualified disabilities under both the Rehabilitation Act of 1973, and the Americans with Disabilities Act.

98.     Defendant repeatedly failed and refused to address the needs of Plaintiff Mary's disabilities, endangering her physically, mentally and emotionally.

99.     As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

100.     As a direct and proximate result of Defendant's conduct, Plaintiffs have further incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to the recovery of attorney's fees pursuant to 29 U.S.C. § 504.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against Defendant Wentzville R-IV School District for actual and compensatory damages in the amount of $8,500,000.00, costs of this action, and attorney's fees pursuant to 29 U.S.C. § 504.

**COUNT IV**
**Violation of 42 U.S.C. § 1983 and**
**Ninth and Fourteen Amendments to the U.S. Constitution**
**(Plaintiff Mary Doe Against Both Defendants)**

101.    Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein

102.    Plaintiff Mary Doe was twice raped while in the custody and control of Defendants, and that conduct violated Mary's constitutional rights to privacy and liberty interest under the Ninth and Fourteenth Amendments of the United States Constitution.

103.    Defendants repeatedly failed and refused to address the needs of Plaintiff Mary's disabilities, endangering her physically, mentally and emotionally.

104.    As a direct and proximate result of Defendants' conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

105.    The conduct of Defendant Berry was committed with deliberate indifference to, and reckless disregard for the rights of Plaintiff Mary Doe, entitling her to punitive damages against Defendant Berry.

106.    As a direct and proximate result of Defendants' conduct, Plaintiffs have further incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to the recovery of attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against both Defendants Wentzville R-IV School District and Laurie Berry for actual and compensatory damages in the amount of

$8,500,000.00, punitive damages against Defendant Berry, individually, costs of this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

**COUNT V**
**Violation of 42 U.S.C. § 1983 (Failure to Supervise) and**
**Ninth and Fourteen Amendments to the U.S. Constitution**
**(Plaintiff Mary Doe Against Defendant Berry)**

107.    Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein.

108.    Defendant Berry was at all times the department head of the Special Education Department of the Wentzville R-IV School District.  In that capacity, she was responsible for supervising, instructing and training the teachers of Plaintiff Mary regarding Mary's disabilities and the safety measures necessary to protect Mary.

109.    Defendant Berry's decisions and refusals to act upon reasonable requests for a paraeducator allowed Plaintiff Mary Doe's rights to privacy and liberty interest under the Ninth and Fourteenth Amendments to the United States Constitution to be violated.

110.    Defendant Berry repeatedly failed and refused to address the needs of Plaintiff Mary's disabilities, endangering her physically, mentally and emotionally.

111.    As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

112.    The conduct of Defendant Berry was committed with deliberate indifference to, and reckless disregard for the rights of Plaintiff Mary Doe, entitling her to punitive damages against Defendant Berry.

113.    As a direct and proximate result of Defendant's conduct, Plaintiffs have further

incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to the recovery of attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against Defendant for actual and compensatory damages in the amount of $8,500,000.00, punitive damages against Defendant Berry, individually, costs of this action, and attorney's fees pursuant to 42 U.S.C. § 1988.

## COUNT VI
## Negligent Infliction of Emotional Distress
## (Plaintiff Mary Doe Against Defendant Berry, Individually)

114.    Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein.

115.    Defendant Berry owed a ministerial duty to Plaintiff Mary Doe by requiring mandatory attendance taking of her subordinate teachers to assure that Mary was accounted for in each class that Mary was required to attend.  Defendant further owed a ministerial duty to Mary by assuring that, under her IEP, Mary was never left alone while on school grounds.[3]

116.    Defendant Berry knew or should have known that a breach of her duties would cause physical and severe emotional damages to Mary.

117.    Defendant Berry did breach her duties to Mary by failing to require mandatory attendance taking of her subordinate teachers, and failing to ensure that Mary was never left alone while on school grounds.

---

[3] A student's IEP and the implementation of it is a ministerial duty which defeats claims of "official immunity". *Kemp v. McReynolds*, 621 S.W.3d 644, 653-655 (Mo.App. E.D. 2021).

118.    As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.

119.    The emotional distress suffered by Mary is medically diagnosable and medically significant.  Mary was diagnosed with post traumatic stress disorder after the first rape, and has required counseling since then.

120.    The conduct of Defendant Berry was committed with deliberate indifference to, and reckless disregard for the rights of Plaintiff Mary Doe, entitling her to punitive damages against Defendant Berry.

121.    As a direct and proximate result of Defendant's conduct, Plaintiffs have further incurred the costs of this action to redress the wrongs inflicted upon her.

WHEREFORE, Plaintiff Jane Doe, as next friend of Mary Doe, respectfully requests this Court enter Judgment in favor of Plaintiff Mary and against Defendant for actual and compensatory damages in the amount of $8,500,000.00, punitive damages against Defendant Berry, individually, and costs of this action.

**COUNT VII**
**Negligent Infliction of Emotional Distress**
**(Plaintiff Jane Doe Against Defendant Berry, Individually)**

122.    Plaintiff hereby incorporates by reference paragraphs 1 – 84, as though fully set forth herein.

123.    The State of Missouri imposes a compulsory duty upon parents under RSMo. § 167.031 to have their children attend public or private education, with some exceptions not applicable here.  Plaintiff Jane Doe did enroll Mary under that duty with the Wentzville R-IV School District, surrendering supervision and control of Mary to both Defendants.

124.    Defendant Berry owed a ministerial duty to both Plaintiffs Jane and Mary Doe, by requiring mandatory attendance taking of her subordinate teachers to assure that Mary was accounted for in each class that Mary was required to attend.  Defendant further owed a ministerial duty to Jane and Mary by assuring that, under her IEP, Mary was never left alone while on school grounds.

125.    Defendant Berry knew or should have known that a breach of her duties would cause severe emotional damages to Jane.

126.    Defendant Berry did breach her duties to Jane by failing to require mandatory attendance taking of her subordinate teachers, and failing to ensure that Mary was never left alone while on school grounds.

127.    As a direct and proximate result of Defendant's conduct, Plaintiff Jane suffered severe mental and emotional distress.

128.    The emotional distress suffered by Jane is medically diagnosable and medically significant.  Jane has been required to become medicated for life threatening blood pressure readings up to 211 over 133, and sedatives to relieve the severe stress caused by Defendant.

129.    The conduct of Defendant Berry was committed with deliberate indifference to, and reckless disregard for the rights of Plaintiff Jane Doe, entitling her to punitive damages against Defendant Berry.

130.    As a direct and proximate result of Defendant's conduct, Plaintiff has further incurred the costs of this action to redress the wrongs inflicted upon her.

WHEREFORE, Plaintiff Jane Doe respectfully requests this Court enter Judgment against Defendant Berry, for actual and compensatory damages in the amount of $1,500,000.00, punitive damages against Defendant Berry, individually, and costs of this action.

Respectfully submitted,

THE BAGSBY LAW FIRM


/s/    Larry A. Bagsby
Larry A. Bagsby, #37296
119 South Main Street
St. Charles, MO  63301
(636) 244-5595 telephone
larrybagsby@aol.com
*Counsel for Plaintiffs*

and

THE DEFEO LAW FIRM


/s/    Daniel T. DeFeo
Daniel T. DeFeo, #35161
G. Dominic Defeo #67481
Erika V. Dopuch #70031
4435 Main Street, Suite 880
Kansas City, Missouri 64111
(816) 581-4600 telephone
ddefeo@defeolaw.com
gdefeo@defeolaw.com
edopuch@defeolaw.com
*Counsel for Plaintiffs*

and

HOLLAND LAW FIRM, of Counsel


/s/   Steven Stolze
Steven Stolze, #39795
414 Hanley Ind. Court
Brentwood, MO 63144
314-640-7550 telephone
stevenstolze@yahoo.com
*Counsel for Plaintiffs*