UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, as Next Friend of Mary Doe, a Minor, and Jane Doe on her own behalf,<br><br>     Plaintiffs,<br><br>vs.<br><br>WENTZVILLE R-IV SCHOOL DISTRICT,<br>and<br>LAURIE BERRY<br><br>     Defendants. | Case No.:  4:22-cv-00461 MTS |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WENTZVILLE R-IV SCHOOL DISTRICT'S MOTION TO DISMISS**

**I.   INTRODUCTION**

   **A.   Summary of the Defendant Wentzville's Motion to Dismiss and Plaintiffs' Responses**

The Defendant Wentzville R-IV School Districts' Motion to Dismiss is based upon two (2) categories.

First, the School District moves to dismiss under F.R.C.P. 12(b)(1) for lack of subject matter jurisdiction.  The School District moves to dismiss Counts II through Count V on the claimed basis that these Counts were required to first be exhausted through the State of Missouri Administrative Hearing Commission because the suit seeks relief (compensatory educational services) available only through the administrative process created by the Individuals with Disabilities Education Act ("IDEA"), specifically 20 U.S.C. § 1415(l).

To the contrary, this lawsuit does not seek any compensatory educational services or relief.  This lawsuit seeks monetary damages only for personal and physical injuries, and those

damages do not require exhaustion for well established reasons. The test is whether the "gravamen" of the Complaint is seeking compensatory educational services that can be addressed only through the IDEA's exhaustion requirement. Moreover, even if exhaustion was considered here, the exception of "futility" to exhaustion applies. One reason is that the minor Plaintiff Mary no longer attends this school, she is in private school and there is nothing that can be fixed. The other reason is that compensatory damages – money damages, are not available under the IDEA. No exhaustion through the state agency is therefore a necessity.

Defendant School District's second basis for the Motion to Dismiss is pursuant to F.R.C.P. § 12(b)(6) for failure to state a claim, with a variety of arguments against each of the five (5) federal counts in the Complaint.

Plaintiffs concede as to one (1) argument against Count II under the Americans with Disabilities Act ("ADA") that the original Complaint misstated the correct statutory cite for a public school entity such as this Defendant. The original Complaint cited 42 U.S.C. § 121**8**2 which applies to private schools, and the correct citation for public schools is 42 U.S.C. § 121**3**2. A First Amended Complaint corrected that technical problem, and was filed July 21, 2022. (Doc. 35). The remaining arguments against the other federal Counts are addressed as they are raised.

**B.**     **Summary of the Factual Allegations**

The minor Plaintiff in this suit has multiple disabilities. Because of that, she has an Individualized Education Program ("IEP"). What the Complaint makes clear is that this minor Plaintiff, under no circumstance, can be left alone and unsupervised. Notwithstanding, this student was raped twice during school hours. In the first instance, she went missing from 11:00 a.m. to 5:00 p.m. on September 11, 2020, and was raped off campus. She was supposed to be

2

attending classes and an after-school function during that six (6) hour period.  The second time she was raped in the girls' bathroom during school hours.

The Complaint makes clear there was always an easy answer to protecting the minor Plaintiff – a paraeducator.  They have existed since 1997, and for the precise purpose of protecting students like the minor Plaintiff.  There's more.  The Complaint makes clear that this particular school district has a demonstrated hostility towards parents pursuing special education services for their children.  They in fact have retaliated against them.

Stunningly, the entirety of Defendant School District's Memorandum of Law fails to mention the first rape completely; avoids any discussion of the previous retaliation a parent had to endure; and, the ninety-one (91) prior incidents of peer on peer sexual harassment occurring at the School.  This is the evidence of "deliberate indifference", "bad faith", and "gross misjudgment".  The Defendant does not even address it.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief must contain a short and plain statement that demonstrates grounds for the court's jurisdiction, showing that the pleader is entitled to relief, and a demand for the relief sought.  The pleading standard does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009). "It is not, however, more than a probability requirement." *Iqbal*, 556 U.S. at 678.

"In addition, some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." *Braden*, 588 F.3d at 594. The complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation in isolation, is plausible." *Id*. "Ultimately, evaluation of a complaint upon a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. ANALYSIS AND ARGUMENT

    **1. Counts IV And V Are <u>Not</u> Redundant Against Defendant Berry In Her Official Capacity, And The School District, Because Defendant Berry Is <u>Not</u> Sued In Her Official Capacity In Those Counts**

Defendant School District's first argument reads into the Complaint facts that are not there. In both Counts of the original Complaint, Counts IV and V are brought against both Defendants, and seek punitive damages against Defendant Berry in her individual capacity. Her official capacity is not even mentioned.

A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual in Section 1983 claims. *Murphy v. Arkansas*,

127 F.3d 750, 754-55 (8th Cir. 1997). Only where the complaint does not specify in what capacity is it presumed they are sued in their official capacity. *Id. 754-55*.

However, to avoid what may have been ambiguous to Defendants and the Court, the proposed First Amended Complaint (Doc. 35) eliminates any confusion between Counts IV and V by removing Defendant Berry entirely from Count IV, and makes Count V an exclusive claim against her in her individual capacity. There is therefore no redundancy.

  **2. Counts IV And V State A Policy And Custom That Was "Deliberately Indifferent" To The Constitutional Violation Of The Minor Plaintiff's Rights To Privacy And Liberty Under The Ninth And Fourteenth Amendments**

In the second argument the Defendant School District isolates from the evidence Defendant Berry's attendance at IEP meetings, and from that, concludes that the evidence fails to demonstrate "…any deliberate choice of the School District…" which resulted in a policy or custom causing injury to the minor Plaintiff.

What the Complaint makes abundantly clear is that from the beginning of attending school at Wentzville, the School District knew that this minor Plaintiff could not be left alone. It also makes clear that there was an easy, readily available answer. She needed a paraeducator. That is why they exist.

The official policy, custom and practice alleged against the Defendants was to deny specialized educational services, specifically a paraeducator, which would have prevented the very injuries that violated Plaintiff's constitutional rights, as well as a host of disability statutory claims. For those reasons, Counts IV and V state a cause of action under Section 1983.

  **3. Counts II Through V Do Not Require Plaintiffs To Exhaust Administrative Remedies Under The IDEA Because The Complaint Does Not Seek Relief Under The IDEA; That It Would Be Futile To Seek Compensatory Damages For Personal Injury In That Forum; And, The Minor Plaintiff No Longer Attends Public School**

To begin with, compensatory damages are not available through the IDEA, *Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996), however, compensatory education and attorneys' fees are. 20 U.S.C. § 1415(i)(3)(B); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000).

The U.S. Supreme Court's most recent decision that addresses this topic is *Fry v. Napoleon Community Schools, et al.*, 580 U.S. 154 (2017). There, the Court held:

> "Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek(s) relief that is also available" under the IDEA. We first hold that to meet that statutory standard, *a suit must seek relief for the denial of a ("Free Appropriate Public Education") FAPE, because that is the only "relief" the IDEA makes "available"*. We next conclude that in determining whether a suit indeed "seeks" relief for such a denial, *a court should look to the substance, or gravamen, of the plaintiff's complaint.*" (emphasis added).

The IDEA does not limit the right to pursue other claims or limit the remedies that are available under other federal claims. The statute itself provides that other claims may be pursued if exhaustion is necessary first to resolve any educational services which are sought under the IDEA. Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

There are exceptions to exhaustion. The Eighth Circuit has long recognized three (3) exceptions to IDEA exhaustion of administrative remedies: "futility, inability of the administrative remedies to provide adequate relief, and the establishment of an agency policy or

6

practice of general applicability that is contrary to law." *J.B. ex rel. Bailey*, 721 F.3d at 594 (quoting *Blackmon ex rel. Blackmon v. Springfield R–XII Sch. Dist.*, 198 F.3d 648, 656 (8th Cir. 1999)); see also *Urban ex rel. Urban v. Jefferson Cnty. Sch. Dist. R–1*, 89 F.3d 720, 724 (10th Cir. 1996).

It is futility and inadequate remedy that is being invoked here. Again, Plaintiff is seeking compensatory damages only, absolutely no compensatory educational services, and the facts giving rise to these claims cannot be remedied under an IDEA due process hearing. The conduct that is being sued upon is personal, physical and mental injuries from being raped twice. The Tenth Circuit has squarely addressed these facts and IDEA exhaustion.

In *Muskrat v. Deer Creek Public Schools*, 715 F.3d 775, 785 (10th Cir. 2013), the court held:

> "No authority holds that Congress meant to funnel isolated incidents of common law torts into the IDEA exhaustion regime. We need not decide here how to handle repeated instances of physical contact as part of an arguably necessary disciplinary program. Here, the Muskrats have alleged three scattered instances of potential battery. All three instances appear to have resulted from simple frustration with J.M. rather than any legitimate disciplinary goal. Requiring parents to raise such claims through an IDEA administrative hearing makes little sense. "[T]he policy supporting the [IDEA] exhaustion requirement ... counsels that parents turn first to educational professionals, as opposed to courts, to remedy disputes over a child's education." Cudjoe, 297 F.3d at 1065 (emphasis added). Even though random violence may occur in the course of a child's education, we do not believe the child's parent must request a "no random violence" clause in the IEP. See, e.g., Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir.2000) (finding IDEA exhaustion not required where the complaint alleges "severe physical, and completely non-educational, injuries"); Franklin v. Frid, 7 F.Supp.2d 920, 925 (W.D.Mich.1998) (excluding "random acts of violence" from IDEA exhaustion requirement)."

Likewise, the Eighth Circuit decision in *M.P. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 867 (8th Cir. 2006), the Court held, in the context of a Section 504 claim, that exhaustion would not be required where the claim was for personal injuries.

7

> "Section 504 is a proscriptive, anti-discrimination statute that prohibits discrimination on the part of governmental actors to avoid due process and equal protection violations.  To establish a prime facie case of disability discrimination under Section 504, the plaintiff must prove:  "(1) [he] is a qualified individual with a disability; (2) [he] was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) [he] was discriminated against based on [his] disability." *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999).  The plaintiff must also show bad faith or gross misjudgment to make a successful Section 504 violation claim.  *Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982).  Examples of successful Section 504 claims include a blanket district-wide policy that shortened the school day for autistic children, *Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1211-12 (9th Cir. 2004); a school district's refusal to place a student with fibromyalgia in an honors class or permit her to obtain school credit by way of home instruction, *Weixel v. Bd. Of Educ.*, 287 F.3d 138, 148 (2nd Cir. 2002); and **a request for monetary damages for physical abuse and injury that special education student suffered while at school**, *Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1276 (9th Cir. 1999).  (*M.P.* at 867)

Applied here, Plaintiffs' claims for personal injury damages therefore make any exhaustion requirement futile.  Simply put, Plaintiffs are asking for damages in this lawsuit that are not even available through IDEA exhaustion.

One additional point, futility applies where a student no longer attends public school.  In *Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000), the Court held that, "… in the unique circumstance of case in which the injured child had already graduated, such that money damages were the only remedy that could make him whole, exhaustion would be futile."  The minor plaintiff here no longer attends public school.  The Complaint alleges nothing regarding complaints of how her IEP is being administered within the private school, and because of that, it would be futile to require exhaustion.

### 4. Counts IV And V Do State A Policy And Custom Which Caused The Deprivation Of Plaintiff's Ninth And Fourteenth Amendments' Constitutional Rights To Privacy And Liberty Because Of Deliberate Indifference To Those Rights

Defendant School District contends that the Complaint fails to set forth municipal liability under Section 1983 because it fails to allege a policy or custom that caused the constitutional violations, and further seems to suggest that the Ninth and Fourteenth Amendments' rights to privacy and liberty are not clearly established rights.  In other words, being raped at school is not a constitutionally recognized, protected right.

The rights to personal autonomy and bodily integrity have been a protected liberty interest since the U.S. Supreme Court decisions in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992).  The federal circuits have reinforced those rights repeatedly. *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (en banc) (reiterating the Fifth Circuit's recognition that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process"); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (quoting Casey for the proposition that it is settled now . . . that the Constitution places limits on a State's right to interfere with a person's ... bodily integrity"); *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981) (recognizing that "[t]he right to be free of state-occasioned damage to a person's bodily integrity is protected by the Fourteenth Amendment guarantee of due process"); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980) (recognizing that the right to be free from intrusions of bodily security that shock the conscience "is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process"); *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974) (stating that "[t]he right violated by an assault has been described as the right to be secure in one's person, and is grounded in the due process clause of the Fourteenth Amendment"). *Doe v. Taylor Independent School District*, 15

F.3d 443 (5th Cir. 1994) (sexual abuse of student violates Fourteenth Amendment liberty interest).

To allege a municipal violation of those rights in a Section 1983 claim, the plaintiff can do so by alleging an official municipal policy, an unofficial custom and practice, or, deliberate indifference to adopt a procedure or practice. *Corwin v. City of Independence, MO*, 829 F.3d 695, 699 (8th Cir. 2016). Plaintiffs here have done just that. The Defendants maintained a custom, practice and policy that denied the minor Plaintiff a paraeducator, and as a result of that, her rights were violated to bodily integrity.

### 5. Counts I, IV and V Do Meet The Standard For Deliberate Indifference Under Title IX And Section 1983

In the Complaint, Plaintiffs allege that Defendant School District had self-reported ninety-one (91) incidents of student-on-student sexual assaults in the preceding ten (10) years prior to the first rape of the minor Plaintiff. In addition, the Complaint alleges, "In calendar year 2018, the U.S. Education Department, Civil Rights Data Collection Division, published that Missouri ranked second in the entire country for the number of rapes or attempted rapes in public schools." The purpose of those incidents and statistics was to demonstrate actual notice and knowledge that Defendant School District was aware it had serious, repeated problems controlling sexual assaults within its schools. The issue of notice and knowledge under Title IX and Section 1983 was therefore satisfied.

The Complaint further alleges that a paraeducator was readily available to protect the minor Plaintiff, but the Defendant School District refused to assign or provide one. In light of the known danger of sexual assaults within their own school district, the decision was made to ignore those known risks and make the minor Plaintiff more vulnerable to them. That is what

deliberate indifference is. "An institution is deliberately indifferent when its response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Doe v. Dardanelle Sch. Dist.*, 928 F.3d 722, 725 (8th Cir. 2019).

The Defendant School District also argues, generally, that Plaintiffs have failed to demonstrate that Plaintiffs' claims satisfy the "severe and pervasive" element to a Title IX claim. The most recent decisions, however, which have addressed this issue have held that the rapes of the minor Plaintiff would satisfy that element.

In S.S. v. Raytown Quality School District, the Western District of this Court denied a motion to dismiss under 12(b)(6), finding that the rape of a disabled student left alone in a bathroom satisfied the "severe and pervasive" standard under Title IX. 2021 WL 3557650 (U.S. District Court W.D. MO) 08-11-2021. That Court further cited other districts holding the same outcome: *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 276 n.15 (4th Cir. 2021) (stating a single incident of sexual assault may be actionable under Title IX if it is "extremely serious.") (citation omitted); *Farmer v. Kan. State Univ.*, No. 16-CV-2256-JAR-GEB, 2017 WL 980460, at *13 (D. Kan. Mar. 14, 2017) (observing "[c]ourts have consistently recognized that a student need not allege multiple instances of sexual assault to state a plausible Title IX claim."); *Albiez v. Kaminski*, No. 09-CV-1127, 2010 WL 2465502, at *6 (E.D. Wis. June 14, 2010) (observing one incident of sexual assault is sufficiently "severe, pervasive, and objectively offensive" if it deprives the victim of access to the school's educational opportunities or benefits); *M. v. Stamford Bd. of Educ.*, No. 3:05-CV-0177 (WWE), 2008 WL 2704704, at *9 (D. Conn. July 7, 2008) (finding one incident of sexual assault of a disabled student was "precisely the type of action covered by Title IX."); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, No. CIV.A.3:01-CV-1092-R, 2002 WL 1592694, at *6 (N.D. Tex. July 16, 2002) (holding "one single instance of a

forced manual penetration of one's vagina seems to qualify as a 'sufficiently severe one-on-one peer harassment.'").

6. **Defendant School District Correctly Identified That The Complaint In Count II Under The ADA Contained The Wrong Statutory Cite, And Plaintiffs Have Corrected That Deficiency In The First Amended Complaint**

The original Complaint alleged in Count II, a violation of 42 U.S.C. § 12182 under the ADA. That statutory section, as the Defendant School District points out, applies only to private school districts. The First Amended Complaint (Doc. 35) corrects that typographical error and cites 42 U.S.C. § 12132. That section applies to public school districts. *DeBord v. Board of Educ. of Ferguson-Florissant School Dist.*, 126 F.3d 1102 (8th Cir. 1997).

7. **Counts II And III Of The Original Complaint Do State The Reasonable Accommodation That Defendants Refused To Provide Under The ADA And The Rehabilitation Act**

As stated in the previous section, the First Amended Complaint corrects the error of the statutory citation under the ADA. The proposed First Amended Complaint cites 42 U.S.C. § 12132.

Under the ADA, the statute provides:

"…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the *benefits of the services*, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Under the Rehabilitation Act, Section 504, the statute provides:

"No otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be *denied the benefits of*, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a)

Replete through the factual averments of the Complaint, and the First Amended Complaint, is the statement that a paraeducator was a service available to the minor Plaintiff

12

which the Defendants refused to provide. Instead of providing that service, Defendant Berry's response was, "We have eyes on her from the time she gets off the bus, to the time she gets back on the bus." And despite that assurance, the minor Plaintiff went missing six (6) hours on September 11, 2020, where she was taken off school grounds and raped. And then again on January 28, 2022, she was raped in the bathroom at school.

Instead of explaining any hardship in obtaining a paraeducator, i.e. financial reasons, staffing, etc., Defendants argue that the appointment of a paraeducator to the minor Plaintiff would have invaded her privacy expectations, citing *Hough v. Shakopee Pub. Schs.*, 608 F.Supp. 2d 1087, 1100-01 (D. Minn. 2009). Defendants are surely free to argue that before a jury, because on balance, Plaintiff Jane Doe preferred that her granddaughter not be raped twice, over the inconvenience of privacy expectations. That is why she requested the paraeducator.

### 8. Count III Under Section 504 Of The Rehabilitation Act Does Allege Bad Faith And Gross Misjudgment For Not Providing A Paraprofessional

In their final argument, Defendants claim, that factually, the Complaint fails to allege and demonstrate "bad faith or gross misjudgment". Plaintiffs disagree.

As an initial observation of this last argument, Defendants ignore completely the facts of the first rape. That on September 11, 2020, the minor Plaintiff went missing at 11:00 a.m. and was not discovered missing until she failed to appear at 5:00 p.m. for the color guard at the high school football game. Every hour was supposed to be accounted for and supervised by school employees. None of this is even mentioned.

Defendants argue that the case *Estate of Barnwell v. Watson*, 880 F.3d 998, 1004-05 (8th Cir. 2018), is somehow analogous and dispositive. There, a student committed suicide after reported acts of bullying. On the record presented to the court, however, there was only one (1)

incident imputing knowledge of trouble between the decedent and another student. The district immediately responded to that one (1) incident. What knowledge was available to the school district in that case, held the court, was insufficient to demonstrate "bad faith or gross misjudgment".

Here, the Defendants had self-reported ninety-one (91) incidents of peer-on-peer sexual assaults occurring at its schools prior to the minor Plaintiff's first rape on September 11, 2020. That's not constructive knowledge of a serious problem, that's not unsubstantial or normal, that is actual knowledge of routine criminal conduct occurring on their property. The refusal to assign a paraeducator to the minor Plaintiff in that environment is bad faith.

There's more. The Complaint demonstrates that historically this School District has been hostile and retaliatory towards parents advocating for special services of their disabled children. In the not-so-distant past, the School District's attorneys actually filed an unprecedented lawsuit against parents seeking special education services that were in fact allowed in that student's IEP. That, then triggered a lawsuit against the School District by those parents which was resolved in the parents' favor. Despite knowing that, these same Defendants then denied the special education services of a paraeducator to these Plaintiffs now before the Court. That is "bad faith" and that is "gross misjudgment".

WHEREFORE, for the foregoing reasons, Defendant Wentzville R-IV School District's Motion to Dismiss must be denied.

Respectfully submitted,
THE BAGSBY LAW FIRM


/s/     Larry A. Bagsby
Larry A. Bagsby, #37296
119 South Main Street
St. Charles, MO  63301
(636) 244-5595 telephone
larrybagsby@aol.com
*Counsel for Plaintiffs*

and
THE DEFEO LAW FIRM


/s/     Daniel T. DeFeo
Daniel T. DeFeo, #35161
G. Dominic Defeo #67481
Erika V. Dopuch #70031
4435 Main Street, Suite 880
Kansas City, Missouri 64111
(816) 581-4600 telephone
ddefeo@defeolaw.com
gdefeo@defeolaw.com
edopuch@defeolaw.com
*Counsel for Plaintiffs*

and
HOLLAND LAW FIRM, of Counsel


/s/   Steven Stolze
Steven Stolze, #39795
414 Hanley Ind. Court
Brentwood, MO 63144
314-640-7550 telephone
stevenstolze@yahoo.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that a copy of the foregoing was electronically filed and served, this 27th day of July, 2022, to:

J. Drew Marriott, #63059
dmarriott@edcounsel.law
Ryan S. VanFleet, #64210
rvanfleet@edcounsel.law
Brian Mayer, #60053
bmayer@edcounsel.law
EDCOUNSEL, LLC
201 N. Forest Avenue, Suite 200
Independence, Missouri 64050
(816) 252-9000 (816) 252-9009 Fax
*Attorneys for Defendants Wentzville R-IV School District and Laurie Berry*


/s/     Larry A. Bagsby