**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

JANE DOE, *as Next Friend of Mary Doe*,　　　)
*et al.*,　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　vs.　　　　　　　　　　　　　　　)　　　　Case No. 4:22-cv-00461-MTS
　　　　　　　　　　　　　　　　　　　　)
WENTZVILLE R-IV SCHOOL DISTRICT,　　　)
*et al.*,　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　　　　)

## MEMORANDUM AND ORDER

This case is before the Court on both Defendant Wentzville R-IV School District's Motion to Dismiss, Doc. [84], and Defendant Laurie Berry's Motion to Dismiss, Doc. [86], Plaintiffs Jane and Mary Doe's Second Amended Complaint, Doc. [83].  For the reasons discussed herein, the Court will grant Defendant Berry's Motion in its entirety.  As for the District's Motion, the Court will grant it in part, dismiss the constitutional claims against the District, and deny the District's Motion in all other respects.

## I.　　Background

Plaintiff Jane Doe ("Jane") is the grandmother and legal guardian of Plaintiff Mary Doe ("Mary"), a seventeen-year-old student with autism and other developmental disabilities.  Jane brings this action both on her own behalf and as next friend of Mary.  *See* Fed. R. Civ. P. 17(c).  This action largely arises from two instances where Mary had sexual relations while she was, or had been and should have remained, at one of Defendant Wentzville R-IV School District's schools.  Because of Mary's developmental disabilities, Plaintiffs allege Mary lacks the capacity

to consent to sexual acts, and she, therefore, was raped in the two incidents at issue.[1]  Plaintiffs contend that Defendant Wentzville R-IV School District (the "District") and Defendant Laurie Berry—the Director and Coordinator for Special Education of the District—committed several actionable statutory, constitutional, and common law claims.

Plaintiffs' Second Amended Complaint brings a total of nine counts—four against the District alone, two against Defendant Berry alone, and three against both Defendants.  In the first three counts, Plaintiff Mary Doe alleges federal statutory violations against the District alone. Count One alleges a Violation of Title IX of the Civil Rights Act of 1964 and Education Amendment Act of 1972 against the District.  *See* 20 U.S.C. § 1681.  Count Two alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132.  And Count Three alleges a violation of the Rehabilitation Act of 1973, 29 U.S.C. § 504.  Mary brings Count Four and Count Five against both Defendants under 42 U.S.C. § 1983, with each count alleging a violation of the Ninth and Fourteenth Amendment via different theories—deliberate indifference and failure to supervise, respectively.

The remaining claims arise under Missouri law.  *See* 28 U.S.C. § 1367(a).  Plaintiffs bring Count Six and Count Seven against Defendant Berry.  Both Counts assert claims for negligent infliction of emotional distress under Missouri law, with Count Six being brought by Mary and Count Seven being brought by Jane on her own behalf.  In Count Eight, Mary alleges the District violated the Missouri Human Rights Act ("MHRA").  *See* Mo. Rev. Stat. § 213.010 *et seq.*  Lastly, in Count Nine, Jane raises the derivative claims of medical expenses and loss of society against both Defendants.  The District moved to dismiss every Count against it except for

---

[1] At this stage in the litigation, where the Court must assume the well-pleaded allegations are true and make all reasonable inferences in Plaintiffs' favor, the Court generally will refer to these incidents like Plaintiffs refer to them.  *See Shank v. Carleton Coll.*, 993 F.3d 567, 569 n.1 (8th Cir. 2021).  Thus, at times, the Court, like Plaintiffs, also uses the term "sexual assault" to describe the incidents, which can encompass "[s]exual intercourse with another person who does not consent."  *Id.* (quoting *Sexual Assault*, *Black's Law Dictionary* (11th ed. 2019)).

Count Eight, which it asks the Court to dismiss in part.  Defendant Berry moved to dismiss every Count against her.

## II.     Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Such a motion tests the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations are true and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019); *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility of a complaint turns on whether the facts alleged allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

III.      **Facts**

Plaintiff Mary Doe is a seventeen-year-old student with autism, attention deficit hyperactivity disorder, and obsessive-compulsive disorder, along with other diagnoses that affect her cognition.  Mary's disabilities qualified her for an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Act ("IDEA"), throughout her time in public educational settings.  *See* 20 U.S.C. § 1400 *et seq.*   In January 2020, Mary transferred from another school district into a middle school within the District.  Upon the transfer, Jane met with a representative from the middle school and told the representative that, due to Mary's disabilities, she "absolutely could not be left unmonitored."  Doc. [83] ¶ 24.  The representative said she understood.

Mary graduated from the middle school, and, in the fall 2020 semester, Mary began attending Holt High School in the District.  Not long into her first semester in high school, Mary, who at that time was fifteen years old, left school premises after her morning classes.  Teachers and staff failed to notice and report that Mary was missing, "despite the classroom teachers having routine and mandatory attendance requirements."  *Id.* ¶ 37.  At about 5:00 p.m. that evening, a coach called Jane to inquire about Mary, who had not shown up for an extracurricular activity she was expected to attend.  Jane then began "desperately looking for Mary" and, shortly before 6:00 p.m., contacted an officer with the Wentzville Police Department.  *Id.* ¶ 39.  The police department located Mary at around 9:30 p.m. at a residence located two miles from Mary's high school.  Mary's blouse was on inside-out, her underwear was in her backpack, and she had alcohol on her breath.  The next morning, a physician at St. Louis Children's Hospital "confirmed" that a "sexual assault" had occurred.  *Id.* ¶ 42.

Plaintiffs allege that the police department determined the identity of the individual that sexually assaulted Mary; it was another student who also attended Holt High School.  Following

- 4 -

the rape, Mary "was diagnosed with post-traumatic stress disorder" and "[c]ounseling services were then provided to [her]." *Id.* ¶ 45.  "Between the time of being raped and April of the following year, Jane kept Mary out of attending Holt High School because the boy who raped her was still there." *Id.* ¶ 46.  Instead, Mary received homebound education until May 2021, when Mary began attending another school in the District, North Point High School.

In November 2021, Jane sent a letter to the assistant principal at North Point High School to inform the assistant principal of Jane's "belie[f] that because of Mary's on-going behavioral problems, the Defendants needed to specifically restrict Mary's access on her school provided [computer] from all means of communicating with other students." *Id.* ¶ 50.  "The letter pleaded with the [assistant] principal to set up 'firewalls' to prevent anything from happening." *Id.*  The Defendants did not restrict Mary's access.

In December 2021, Jane attended an IEP meeting for Mary.  Present at the meeting, besides Jane, were Mary's special education teacher, an advocate with a not-for-profit organization known as Family Advocacy and Community Training ("FACT"), and the District's "IEP team." *Id.* ¶ 48.  Plaintiffs allege that it "was the opinion" of Mary's teacher and "the entire IEP team" that Mary's "continuing poor performance and behavior was the result of the rape." *Id.* ¶ 48.  In that same meeting, Jane and the FACT advocate "requested, as they had in the past, that a paraeducator be provided to Mary for both her safety and support." *Id.* ¶ 49.  The Defendants "refused." *Id.*

In January 2022, Jane attended another IEP meeting for Mary.  The FACT advocate, "the entire IEP team," and Defendant Berry also were present at the meeting. *Id.* ¶ 52.  In that meeting, Jane and the FACT advocate again asked for a paraeducator to be assigned to Mary.  "That request was again denied." *Id.*  Defendant Berry "addressed the issue of Mary's safety" and "the reason no paraeducator was necessary," saying: "We've got eyes on [Mary] from the

time she gets off the bus until the time she gets back on the bus." *Id.* ¶ 53.  Plaintiffs allege that "[n]o reason at all existed" for why Mary "had not been provided a paraeducator," other than a paraeducator "costs money." *Id.* ¶ 54.

The day following Mary's annual IEP meeting, "an older student, who was also autistic," "raped [Mary] in the girls' restroom at North Point High School." *Id.* ¶ 55.  Plaintiffs allege that, "[a]ccording to [Defendants], Mary had consented and arranged to have sex with the student on her [school-provided computer]." *Id.* ¶ 56.  Plaintiffs allege that Defendants did not contact the Wentzville Police Department about the rape since Mary was sixteen and since Defendants believed Mary had arranged the assignation herself and had consented to it.  But Plaintiffs maintain that Mary lacked "capacity to consent to sexual acts." *Id.* ¶ 57.  So, Jane herself contacted the Wentzville Police Department "to report the incident." *Id.* ¶ 58.

The following week, on February 01, 2022, Defendants suspended Mary from North Point High School for a period of ten days.  Plaintiffs allege Defendants suspended Mary "because of the rape." *Id.* ¶ 59.  Defendants timely scheduled a manifestation determination meeting.  *See* 34 C.F.R. § 300.530(e).  Plaintiffs allege that Defendants cancelled the manifestation determination meeting prior to its occurrence and said they "would hold another IEP meeting on February 28, 2022." *Id.* ¶ 63.  Plaintiffs allege that between February 01 and February 28, Mary "received no educational services from Defendants at all." *Id.* ¶ 64.

At the scheduled February 28 IEP meeting, Plaintiffs allege Defendant Berry stated, "[w]e said we would keep [Mary] safe, and we clearly failed at that task." *Id.* ¶ 66.  Defendant Berry then informed Jane that the District would pay for Mary to attend private school, which Mary began attending on April 12.  Though Mary attended the private school, Plaintiffs allege that Defendants continued to "control Mary's education and IEP." *Id.* ¶ 68.

While attending the private school, Mary received straight A's on mid-term grades for the Fall 2022 semester, which contrasted greatly with her grades prior to leaving the District. Plaintiffs contend that the grades Mary received were "a litigation miracle" not rooted in reality but, rather, were orchestrated deceitfully by Defendants who "were trying to portray Mary as perfect, unharmed and without trauma." *Id.* ¶ 71.  During an IEP meeting, Plaintiffs allege that the staff at the private school sought to convince Jane that Mary should graduate early because she had been doing so well.  Plaintiffs allege Defendants only "want to quit paying for Mary's schooling." *Id.* ¶ 74.

## IV.     Discussion

### a.   Count One – Title IX

To state a claim for a Title IX violation in the wake of a peer-on-peer sexual assault, a plaintiff must plead facts that establish that the qualifying institution was (1) deliberately indifferent, (2) to known acts of discrimination,[2] (3) which occurred under its control. *See Shank v. Carleton Coll.*, 993 F.3d 567, 573 (8th Cir. 2021).  Further, pleaded facts must establish that the discrimination was so severe, pervasive, and objectively offensive that it can be said to have deprived the victim of access to the educational opportunities or benefits provided by the school. *Id.*; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).  In its Motion to Dismiss this claim, the District only challenges the Complaint's sufficiency of establishing deliberate indifference.  *See* Doc. [84] at 2; Doc. [85] at 16.

An institution is "deliberately indifferent" to acts of student-on-student harassment only where its response to the harassment or lack thereof is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.  Additionally, the deliberate indifference must

---

[2] The United States Court of Appeals for the Eighth Circuit "treats peer sexual assault as a form of sex discrimination for Title IX purposes."  *See Shank*, 993 F.3d at 573.

have caused the student to undergo harassment or made the student liable or vulnerable to it.

*Shank*, 933 F.3d at 573.  In her Title IX claim, Mary alleges:

> 93.   Plaintiff Mary was twice subjected to sexual rapes, during school hours, both on and taken from school grounds under the control of Defendant.
>
> 94.   Defendant knew and had actual, as well as constructive notice of the presence, severity and risks of peer-on-peer sexual assaults within its school district.
>
> 95.   Defendant failed and refused to take reasonable, preventable measures to prohibit the conduct against Mary, and such conduct was deliberately indifferent to the dangers toward Mary.
>
> 96.   As a direct and proximate result of Defendant's conduct, Plaintiff Mary suffered the physical and mental trauma of rape, humiliation and outrage, severe mental and emotional distress, now requiring extended future psychological care and treatment.
>
> 97.   As a direct and proximate result of Defendant's conduct, Plaintiffs have further incurred the costs of this action to redress the wrongs inflicted upon her, and are entitled to recovery of attorney's fees pursuant to 20 U.S.C. § 1681 and 42 U.S.C. § 1988.

Doc. [83].

In an effort "to demonstrate actual notice and knowledge that [the District] was aware it had serious, repeated problems controlling sexual assaults within its schools" prior to Plaintiff's first rape, Doc. [90] at 8, the Second Amended Complaint elsewhere included allegations regarding the prevalence of peer-on-peer sexual assaults in the District and in Missouri generally, Doc. [83] ¶¶ 88–91.  The District argues that these general statistics are not enough to establish notice toward which one could be deliberately indifferent.  *See* Doc. [85] at 17 (arguing Plaintiffs' "conclusory allegations that harassment occurs in schools are simply too vague and immaterial to allege the required facts on the 'known circumstances' required to establish the deliberate indifference element" of Plaintiff's Title IX claim); *see also Davis*, 526 U.S. at 649 (noting Title IX "does not mean that recipients can avoid liability only by purging their schools

- 8 -

of actionable peer harassment").  The Court concludes that it need not address this argument at this point in the litigation, however, because Plaintiff's allegations in her Title IX claim encompass both rapes she endured.  Thus, the "known circumstances" leading to the second rape include the first rape,[3] and deliberate indifference to the first rape could have made Mary "liable or vulnerable" to the second rape based on the alleged facts in this case.  *See Davis*, 526 U.S. at 645.  A Title IX claim for the second rape therefore survives the District's known circumstances challenge, see Doc. [85] at 17, even *if* the first rape does not.

In the first incident, Plaintiffs allege Mary was "taken from school grounds," "during school hours, and raped."  Doc. [83] ¶ 93.  Besides this first rape, Plaintiffs allege the District was well aware that Mary had numerous "diagnosed disabilities," including autism.  *Id.* ¶ 13.  Among other limitations, her autism limits her ability to interpret the "intention of others" and causes her to "lack[] awareness of social rules and expectations."  *Id.* ¶ 15.  In both "the educational setting and at home," she "can never be left alone or unsupervised," in no small part because she "does not understand or appreciate social rules, risks and danger."  *Id.* ¶ 16.  When she once was left unsupervised at school, she was taken from school grounds and raped.  These were the known circumstances prior to the second rape.

With those as the alleged known circumstances, the issue before the Court is whether the District's response could be considered clearly unreasonable.  Multiple times following the first rape, Jane requested that the District provide Mary with a paraeducator, so someone constantly would be with her while she was at school.  Jane also requested that the District limit Mary's ability to communicate with other students on her school-provided computer.  The District did

---

[3] The District has not argued that the first rape did not "occur[] under its control."  *Shank*, 993 F.3d at 573.  *See also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (concluding a private damages action under Title IX may lie "only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities"); *id.* at 644 ("Deliberate indifference makes sense as a theory of direct liability under Title IX only where the funding recipient has some control over the alleged harassment.").

neither.  *See* Tiffany Cummins Nick, *Protecting Students with Disabilities from Sexual Harassment in Education: Title IX and More*, 70 DOJ J. Fed. L. & Prac. 217, 234 (2022) ("Title IX's protection from sexual harassment applies to all students, regardless of whether they have a disability, but a student's disability can be a critical factor in evaluating whether a funding recipient acted with deliberate indifference.").  Rather, a District employee assured Jane that there were "eyes on [Mary]" throughout the day.  *Id.* ¶ 53.  At this stage, the Court cannot conclude, as a matter of law, that the District's response to the known circumstances—or lack of response to the known circumstances—was not clearly unreasonable.  When taking the properly pleaded allegations as true, and making all reasonable inferences in Plaintiff's favor, Plaintiff has met the deliberate indifference element, which is the only challenge the District put forward in its Motion.[4]

To be clear, the Court is not concluding that, as a matter of law, it *was* clearly unreasonable that the District did not provide Mary a paraeducator or limit her virtual communication ability after the first incident, like Jane requested.  *See Davis*, 526 U.S. at 648 (explaining that "victims of peer harassment" do *not* have a "Title IX right to make particular remedial demands").  The Court's conclusion means only that taking Plaintiff's well-pleaded factual allegations as true, as the Court must at this stage, they plausibly give rise to an entitlement to relief under Title IX.  *See Iqbal*, 556 U.S. at 679; *cf. Davis*, 526 U.S. at 677 (Kennedy, J., dissenting) (foretelling that the *Davis* opinion was "so broad that it will support untold numbers of lawyers who will prove adept at presenting cases that will withstand" school districts' motions to dismiss).

---

[4] Proving deliberate indifference will be "a difficult burden for [Plaintiff] to meet."  *See Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) (quoting *Rellergert v. Cape Girardeau Cnty.*, 924 F.2d 794, 796 (8th Cir. 1991)); *see also Davis*, 526 U.S. at 642 (noting that Title IX uses the "'deliberate indifference' theory already used to establish municipal liability" under 42 U.S.C. § 1983).  But the question before the Court today is not whether Plaintiff ultimately will prevail, only whether she has stated a claim.  *Twombly*, 550 U.S. at 556 (explaining that a well-pleaded complaint may proceed even if success on the claim seems "very remote and unlikely").

**b. Count Two and Count Three – the ADA and § 504 of the Rehabilitation Act**

Mary alleges in Count Two that the District violated the Americans with Disabilities Act and in Count Three that the District violated § 504 of the Rehabilitation Act.  The District puts forth two arguments on why the Court should dismiss these claims.

The District first seeks dismissal of both claims based on Plaintiff's failure to exhaust her administrative remedies under the IDEA.  *See* 20 U.S.C. § 1415(*l*); *see also Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 165 (2017) (explaining the IDEA "requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA" if her suit "seeks relief that is also available under the IDEA").  After briefing on this Motion concluded, the Supreme Court released an opinion that makes it clear that § 1415(*l*) did not require Plaintiff to exhaust her claims in this suit for compensatory damages.  *See Luna Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 864 (2023) ("The statute's administrative exhaustion requirement applies only to suits that 'see[k] relief . . . also available under' IDEA.  And that condition simply is not met in situations like ours, where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide."); *see also* Doc. [97].  Since § 1415(*l*) does not require Mary to have exhausted her claims for compensatory damages, the Court turns to the District's argument on the merits of these two claims.

Like on the Title IX claim in Count One, the District argues that Mary failed to allege facts that establish the necessary elements to state a claim under the ADA or § 504 of the Rehabilitation Act.  To have a claim under either of these acts,[5] a plaintiff must establish that she (1) was a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her

---

[5] The Eighth Circuit "ha[s] held that the enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act."  *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013).

- 11 -

disability.  *Est. of Barnwell ex rel. Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018).  And further, like here, where the alleged ADA and § 504 violations are based on educational services for disabled children, the Eighth Circuit consistently has held that "the plaintiff must prove that school officials acted in bad faith or with gross misjudgment.'"  *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013); *see also Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 876 (8th Cir. 2020).

The District's sole argument on the merits of these claims is that Plaintiffs' allegations fail to show the required bad faith or gross misjudgment.  Doc. [85] at 20–21.  "In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct departed substantially from accepted professional judgment, practice or standards so as to demonstrate that the persons responsible actually did not base the decision on such a judgment." *B.M.*, 732 F.3d at 887 (internal quotations and alterations omitted).  Bad faith or gross misjudgment requires more than "mere non-compliance with the applicable federal statutes." *Id.* The non-compliance "must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *Id.*; *see also Richardson*, 957 F.3d at 876–77.

Taking the well-pleaded allegations as true and providing the Plaintiff with her favorable inferences, the Court concludes that Plaintiff has stated a claim for violations of the ADA and § 504 of the Rehabilitation Act.

### c.   Count Four and Count Five – the Ninth and Fourteenth Amendments to the Constitution via 42 U.S.C. § 1983

In Count Four and Count Five, Mary brings a claim pursuant to 42 U.S.C. § 1983 against the District and Defendant Berry.[6]  Since "[§] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" the "first step" in any § 1983 claim "is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *accord Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998) ("As in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated.").  Mary brings both Count Four and Count Five "under the Ninth Amendment, and substantive due process under the Fourteenth Amendment of the United States Constitution." Doc. [83] ¶¶ 109, 116.  Mary premises Defendants' liability on two different theories, with Count Four premised on "Deliberate Indifference" and Count Five on "Failure to Supervise." Both theories fail for the same reason; Mary does not allege any underlying constitutional violation.

Except in "certain limited circumstances," it "'simply does not constitute a violation of the Due Process Clause'" when the government fails "to protect an individual against private violence."  *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989)).  The United States Court of Appeals for the Eighth Circuit has recognized only two limited circumstances where the government can be liable for failing to protect an individual against private violence:

---

[6] Plaintiffs' Second Amended Complaint brings Count Four against "Defendant School District and Defendant Berry, Individually," and it brings Count Five against "Defendant Berry, in her Individual and Official Capacities." Each has the same effect of being against Defendant Berry individually and against the District. *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (explaining that suits against public employees in their official capacities are suits against their public employer).

(1) in custodial settings, where the state itself has limited the individuals' ability to care for themselves, and (2) when the state is responsible for placing an individual in a position of danger that otherwise would not exist.  *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 781 (8th Cir. 2001).

Plaintiff argues the first exception applies here, that she "was in [Defendants'] care and custody."[7]  Doc. [98] at 5; *accord* Doc. [83] ¶ 109 (alleging "Plaintiff Mary Doe was twice raped while in the custody and control of Defendants, and that conduct violated Mary's constitutional rights to privacy and liberty interest under the Ninth Amendment, and substantive due process under the Fourteenth Amendment").  While a student may be in a school's custody or control in the colloquial sense of the words, binding precedent makes clear that students are not in the type of custody or control that creates a *constitutional* duty of care.  *See Lee v. Pine Bluff Sch. Dist.*, 472 F.3d 1026, 1030 (8th Cir. 2007); *Shrum*, 249 F.3d at 781; *Dorothy J.*, 7 F.3d at 731.  *See also, e.g.*, *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012) (en banc); *Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, 0:20-cv-1971-DSD, 2021 WL 3293627, at *4 (D. Minn. Aug. 2, 2021).

The Supreme Court explained in *DeShaney* that a constitutional duty of care arises only "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself."  *DeShaney*, 489 U.S. at 200; *accord Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("When a person is institutionalized—and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist.").  Thus, school attendance, even though mandatory, does not give rise to a constitutional duty of care that could trigger liability based on substantive due process.  *Lee*, 472 F.3d at 1030.

---

[7] Plaintiff does not argue that the second exception, where the state is responsible for placing an individual in a position of danger that otherwise would not exist, applies here.  *See S.S. v. McMullen*, 225 F.3d 960, 962 (8th Cir. 2000) (en banc) (explaining that "if the state acts affirmatively to place someone in a position of danger that he or she would not otherwise have faced, the state actor, depending on his or her state of mind, may have committed a constitutional tort").  Nor does it appear it would apply here.  *See, e.g.*, *Elsharkawy v. Chisago Lakes Sch. Dist. Bd. of Educ.*, 0:20-cv-1971-DSD, 2021 WL 3293627, at *4 (D. Minn. Aug. 2, 2021).

Mary argues that her intellectual disabilities make this case different. Doc. [98] at 1 ("The minor Plaintiff's disabilities do not neatly fall into a traditional non-custodial setting."). The *Dorothy J.* case says otherwise. 7 F.3d at 731. There, the plaintiff brought suit against her developmentally disabled son's school district as well as some district employees. *Id.* She alleged a violation of her son's due process rights "to personal integrity and security" when another student raped her son in a high school shower. *Id.* She claimed that defendants failed to protect her developmentally disabled son from the other student. *Id.* The Eighth Circuit affirmed the Rule 12(b)(6) dismissal of her claim because it found state-mandated school attendance does not impose upon the state the same duty to protect it owes to prison inmates. The court specifically noted that the plaintiff's son's developmental disability did not "alter the equation." *Id.* at 732. It explained that, under *DeShaney*, "it is 'the State's affirmative act of restraining the individual's freedom to act on his own behalf,' not the individual's own limitations, that gives rise to the constitutional duty to protect." *Id.* (quoting *DeShaney*, 489 U.S. at 200).[8]

Plaintiff points to a case she says is instructive, *Doe v. North Homes, Inc.*, 11 F.4th 633 (8th Cir. 2021), but the Court concludes it is not. *North Homes* dealt with another aspect of § 1983 that is not at issue here, and, in any event, the case's facts are markedly distinguishable.

---

[8] While the Court concludes *Dorothy J.* forecloses Plaintiff's claim, a case from the United States Court of Appeals for the Ninth Circuit is worth noting given its striking factual similarity and that court's rejection of the same argument Plaintiff makes here. *See Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011). In *Patel*, a developmentally disabled student's parents had requested that their daughter remain under adult supervision at all times while she was at school because her disability prevented her from recognizing dangerous situations and caused her to act inappropriately with others. *Id.* at 968–70. Nevertheless, the student's teacher allowed the student to use the restroom alone, and the student had sex with a classmate during this unsupervised time. *Id.* at 968–69. Like the Eighth Circuit has held, the Ninth Circuit held in *Patel* that compulsory school attendance laws do not create a special relationship between public schools and students that, constitutionally speaking, requires schools to protect the students from private harm. *Id.* at 973–74. The Ninth Circuit rejected the student's argument that the case was distinguishable from other cases since the student's "IEP obligated [the school] to guard against [her] special vulnerabilities." *Id.* at 974. The court reasoned that "[i]n the case of a minor child, custody does not exist until the state has so restrained the child's liberty that the parents cannot care for the child's basic needs," and a "tailored educational program for a disabled student does not meet this threshold." *Id.*

In *North Homes*, the minor plaintiff lived in a privately-run residential correctional unit where an employee sexually assaulted her for three days. *Id.* at 635. The question before the court was whether the defendant, the privately-run residential correctional unit, qualified as a state actor under 42 U.S.C. § 1983. Here, the issue is not whether Defendants qualify as state actors, which they do, it is whether they are liable for the misdeeds of *non*-state actors, *i.e.*, other students. Further, this case differs factually from *North Homes* where the defendant's employee assaulted the plaintiff. *Id.* at 636. Therefore, the defendant could have been liable for the employee's conduct because a constitutional violation by a state actor can establish *Monell* liability,[9] provided the other requirements for liability are met. *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (explaining that there must be an unconstitutional act by an employee before a government entity can be held liable under *Monell*); *Corwin v. City of Indep.*, 829 F.3d 695, 699 (8th Cir. 2016).

Because there was no underlying violation of Plaintiff's "rights to privacy and liberty interest under the Ninth Amendment"[10] or "substantive due process under the Fourteenth Amendment," Count Four and Count Five fail to state a claim. *See Moore ex rel. Moore v. Briggs*, 381 F.3d 771, 775 (8th Cir. 2004).

### d.  Count Six and Count Seven – Negligent Infliction of Emotional Distress

In Count Six and Count Seven, Plaintiffs assert a claim for negligent infliction of emotional distress under Missouri common law against Defendant Berry in her individual capacity. Mary herself brings Count Six, and Jane brings Count Seven.

---

[9] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[10] If this due process analysis does not foreclose Plaintiffs' tacked on Ninth Amendment claim, that claim also would fail on the merits. *See Miller v. City of Ellisville*, 4:05-cv-00816-ERW, 2005 WL 2172379, at *1 n.2 (E.D. Mo. Aug. 24, 2005); *Walker v. Shafer*, 22-1610, 2022 WL 4870368, at *1 (8th Cir. Oct. 4, 2022) (per curiam) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986)).

Defendant Berry raises multiple arguments in response to these two Counts.  Her first argument is dispositive of both claims—Berry's official immunity under Missouri law bars Plaintiffs' negligence claims.  Under Missouri common law, official immunity "protects public officials sued in their individual capacities 'from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019) (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008)).  But the official immunity doctrine "does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir. 2017) (quoting *Southers*, 263 S.W.3d at 610).  "The 'ministerial' exception to official immunity is a narrow one" and "made on a case-by-case" basis. *Gray-Ross v. St. Louis Pub. Schs.*, 643 S.W.3d 665, 670 (Mo. Ct. App. 2022) (quoting *Kemp v. McReynolds*, 621 S.W.3d 644, 654 (Mo. Ct. App. 2021)).  As such, the issue here is whether Defendant Berry's alleged duties were "ministerial."

Plaintiffs say they "allege two (2) distinct ministerial duties."  Doc. [92] at 7. Specifically, Plaintiffs allege "Defendant Berry owed a ministerial duty to Plaintiff Mary Doe by requiring mandatory attendance taking of *her subordinate teachers* to assure that Mary was accounted for in each class" and "owed a ministerial duty to Mary by assuring that, under her IEP, Mary was never left alone while on school grounds."  Doc. [83] ¶ 122 (emphasis added); *accord id.* ¶ 131.  But "[t]his type of supervisory conduct and policy making is discretionary and covered by official immunity." *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 733 (Mo. Ct. App. 2011) (citing *Southers*, 263 S.W.3d at 621).  Plaintiffs' allegations relate to Defendant Berry's "general supervision of employees," and Plaintiffs make "[n]o allegations . . . indicating [Berry had] any direct involvement . . . in the activities in [] class" with Mary. *Nguyen*, 353 S.W.3d at 733.

Even assuming for the sake of argument that those two duties were ministerial, those were *not* Defendant Berry's duties according to Plaintiffs' own allegations. *See, e.g.*, Doc. [83] ¶ 37 (explaining it was classroom teachers who had the duty to take attendance and notice and report absent students); *id.* ¶ 5 (alleging Defendant Berry is the Director and Coordinator for the Special Education Services for the entire District).[11]  Nor do Plaintiffs make allegations that Defendant Berry breached duties she herself owed that derived from statutory or departmentally mandated policy.  *Stephens v. Dunn*, 453 S.W.3d 241, 250 (Mo. Ct. App. 2014) ("[I]n cases alleging tort against a government employee, the Missouri Supreme Court has further declared that absent allegations that a government employee violated 'either a statutory or departmentally-mandated duty,' a plaintiff's petition is 'insufficient to state a claim which is not barred by the doctrine of official immunity as a matter of law.'" (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986))); *see also, e.g.*, *A.F. v. Hazelwood Sch. Dist.*, 491 S.W.3d 628, 632 (Mo. Ct. App. 2016) (dismissing claims against a principal and schoolteacher based on official immunity because the "petition simply does not contain sufficiently specific facts demonstrating the existence of a mandated duty").

To the contrary, Defendant Berry's duties, as alleged, were to supervise and ensure compliance with these requirements.  Doc. [83] ¶ 124 ("Defendant Berry did breach her duties to Mary by failing to require mandatory attendance taking of her *subordinate teachers*" (emphasis added)); *id.* ¶ 115 (alleging Berry is "responsible for supervising, instructing and training the teachers of Plaintiff Mary regarding Mary's disabilities and the safety measures necessary to protect Mary").  Official immunity shields liability as a matter of law in circumstances such as

---

[11] Notably, Plaintiffs never alleged Defendant Berry had the duty to monitor Mary to ensure she was never left alone.  As Plaintiffs allege, Defendant Berry is the Director and Coordinator for the Special Education Services for the entire District, a district with "over 17,350 students" and "over 2,500 staff members."  Doc. [83] ¶¶ 4–5; *see also id.* ¶¶ 48, 52 (explaining Mary has a special education teacher, a FACT advocate, and an "entire IEP team," apart from Defendant Berry).  As explained in this Memorandum and Order, Defendant Berry's alleged failure to supervise or train subordinate teachers in their duty to monitor Mary is covered by official immunity.

this case. *Southers*, 263 S.W.3d at 621 ("Their conduct at issue involves highly discretionary supervisory and policy decisions that the doctrine [of official immunity] is intended to shield."); *Nguyen*, 353 S.W.3d at 733; *see also, e.g.*, *Davis v. Buchanan Cnty.*, 5:17-cv-06058-NKL, 2018 WL 10811205, at *3 (W.D. Mo. Dec. 18, 2018) (holding a plaintiff's negligence claim against a warden is barred by official immunity where there were no allegations he was "directly involved" with the acts but instead, "his involvement stem[med] from his position as warden" and "his supervisory responsibilities"). Therefore, the Court will dismiss Count Six and Count Seven.

### e. Count Eight – MHRA

In Count Eight, Mary asserts a claim under the MHRA against the District for alleged "discrimination based upon public accommodation, disability, and sex." Doc. [83] ¶ 139. The District seeks a partial dismissal of this claim, arguing that any alleged acts of discrimination that occurred before October 23, 2021—that is, more than 180 days before Plaintiff's complaint of discrimination—should be dismissed. *See* Mo. Rev. Stat. § 213.075.1. In response, Plaintiff argues that, under the continuing violation doctrine, a complaint of discrimination covering all the discriminatory conduct was filed timely. *See Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 401 (Mo. Ct. App. 2013) ("Under the continuing violation theory, a victim of discrimination may pursue a claim for an act occurring prior to the statutory period, if she can demonstrate the act is part of an ongoing practice or pattern of discrimination."). After due consideration, the Court concludes that when taking all Plaintiff's properly pleaded allegations as true and providing her reasonable inferences, Plaintiff plausibly pleads a continuing violation. The Court therefore will deny this portion of the District's Motion.

### f.   Count Nine – Medical Expenses and Loss of Society

Finally, in Count Nine, Jane brings a claim for "Medical Expenses and Loss of Society" against both the District and Defendant Berry.  Plaintiff alleges that she "has lost the society" of Mary, which has caused Jane "trauma, isolation, physical injury, mental and emotional distress," and "medical expenses."  Doc. [83] ¶ 149.  The District moved to dismiss this claim against it based on sovereign immunity.  Jane concedes that the Court should dismiss Count Nine against the District because of the District's sovereign immunity.  Doc. [90] at 13.

Defendant Berry moved to dismiss Count Nine in the event the Court dismissed Count Six or Count Seven, arguing that Count Nine is a derivative claim that needs an underlying claim for personal injury.  Plaintiff opposes Berry's Motion but gives no coherent opposition.  A parent's claim for loss of services or medical expenses under Missouri law indeed is a derivative claim.  *See* Mo. Approved Jury Instr. (Civil) § 4.18 (8th ed.); *id.* at § 31.04; *see also, e.g.*, *Lair v. Am. Fam. Mut. Ins. Co.*, 789 S.W.2d 30, 31 (Mo. banc 1990) (describing how the plaintiff's parents "joined suit to pursue their derivative claim of $17,997.88 for medical expenses provided their son as a result of the accident"); *Seithel v. Clifford*, 689 S.W.2d 91, 91–92 (Mo. Ct. App. 1985) (noting the appellant "sued for her injuries and her parents . . . sued on their derivative claim for medical expenditures and loss of services").  Even the very case Plaintiff cited in opposition makes that conclusion inescapable.  *See R.M. v. City of St. Charles Pub. Sch. Dist.*, 4:15-cv-706-CAS, 2016 WL 2910265, at *8 (E.D. Mo. May 19, 2016) ("When a minor is injured because of another's fault, two causes of action arise: the minor's claim for damages for personal injuries and the parents' claim for loss of services and expenses necessarily incurred by them for the minor's medical treatment." (quoting *Eaves v. Boswell*, 852 S.W.2d 353, 358 (Mo. Ct. App. 1993))).  No other claim against Defendant Berry remains.  These derivative claims against her in Count Nine, then, necessarily must fail as well.

- 20 -

<u>**C**ONCLUSION</u>

In sum, the Court will grant Defendant Berry's Motion to Dismiss in its entirety and dismiss the claims against her.  The Court will grant the District's Motion in part and dismiss the constitutional claims against it, Count Four and Count Five, and deny the District's Motion in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wentzville R-IV School District's Motion to Dismiss, Doc. [84], is **GRANTED in part** and **DENIED in part** consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant Laurie Berry's Motion to Dismiss, Doc. [86], is **GRANTED**.  The claims against her in this action are **DISMISSED**, and the Clerk of Court is directed to terminate her as a party to this action on the Court's docket.

Dated this 14th day of April 2023.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE