**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, *as Next Friend of Mary Doe*, *et al.*, ) ) ) Plaintiffs, ) ) vs. ) ) WENTZVILLE R-IV SCHOOL DISTRICT, *et al.*, ) ) ) ) Defendants. ) | Case No. 4:22-cv-00461-MTS |

## MEMORANDUM AND ORDER

This case is before the Court on Defendant Wentzville R-IV School District's Motion to Dismiss, Doc. [167], Defendants Erin Abbott, Betsy Bates, Dan Brice, Curtis Cain, Jason Goodson, and Shannon Stolle's Motion to Dismiss, Doc. [169], and Defendant Sandy Garber's Motion to Dismiss, Doc. [174]. For the reasons discussed herein, the Court will grant the Motions.

**I.     Background**

Plaintiff Jane Doe is the grandmother and legal guardian of Plaintiff Mary Doe, a now eighteen-year-old student with autism and other developmental disabilities. Jane brings this action both on her own behalf and as next friend of Mary. *See* Fed. R. Civ. P. 17(c). This action largely arises from two instances where Mary had sexual relations while she was, or had been and should have remained, at one of Defendant Wentzville R-IV School District's schools. Because of Mary's developmental disabilities, Plaintiffs

allege Mary lacked the capacity to consent to sexual acts, and she, therefore, was raped in the two instances at issue.[1]

Plaintiffs brought numerous claims against the Wentzville R-IV School District (the "District") and Laurie Berry, the Director and Coordinator for Special Education for the District.  The Court previously dismissed some of the claims against the District and all the claims against Berry.  *See* Doc. [101] (2023 WL 2951619).  Well into the litigation, Plaintiffs sought leave to file a Third Amended Complaint to add additional claims, and additional Defendants, based on purported revelations in discovery regarding lewd messages Mary Doe sent to and received from a classmate.  The Court granted the Motion.  Doc. [151].  Plaintiffs' Third Amended Complaint brings the claims that survived the original round of Motions to Dismiss along with two additional claims.  In Count IV, Plaintiffs seek a declaratory judgment against the District premised on the Children's Internet Protection Act ("CIPA"), Pub. L. No. 106-554, 114 Stat. 2763, 2763A-335 (2000) (codified as amended at 47 U.S.C. § 254), and its subsection 1732 of the Act, subtitled[2] the Neighborhood Children's Internet Protection Act ("NCIPA") and presently codified at 47 U.S.C. § 254(*l*).  In Count V, Plaintiffs assert a claim of negligence per se under Missouri law premised on a violation of CIPA and NCIPA against seven individuals.[3]

---

[1] For a more complete recitation of the allegations, see Doc. [101] at 4–7 (2023 WL 2951619, at *2–4).

[2] *See* 47 U.S.C. § 609 note (Short Title of 2000 Amendment); *see also* Anuj C. Desai, *Filters and Federalism: Public Library Internet Access, Local Control, and the Federal Spending Power*, 7 U. Pa. J. Const. L. 1, 131 n.113 (2004) (explaining NCIPA's role within CIPA).

[3] These Defendants are Curtis Cain, Superintendent of the District; Betsy Bates, Board President of the District; Dan Bice, Board Vice President of the District; Erin Abbott, Board Member of the

Now pending before the Court are three Motions to Dismiss. The District asserts a facial attack on the Courts subject matter jurisdiction over the new claim against it for a declaratory judgment. *See* Fed. R. Civ. P. 12(b)(1). Defendants Cain, Bates, Brice, Abbott, Goodson, and Stolle's Joint Motion to Dismiss the negligence per se claim against them, along with Defendant Garber's Motion to Dismiss the negligence per se claim against her, asserts that Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). With the proper standards in mind, the Court examines Defendants' arguments. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (discussing motion to dismiss for lack of subject matter jurisdiction standard in facial attack); *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010) (discussing motion to dismiss for failure to state a claim standard).

**II.    Discussion**

    a. Count IV

In Count IV, Plaintiffs claim that the District is "in violation of CIPA and NCIPA by failing to have software filtering and monitoring systems." Doc. [153] ¶ 126. Plaintiffs seek a declaratory judgment that "direct[s]" the District "to immediately purchase and implement a software filtering and monitoring system for sexual content as required by CIPA and NCIPA." *Id.* ¶ 128. Defendants assert that there is no live case or controversy regarding the District's internet resources because Mary Doe stopped using

---

District; Sandy Garber, Board Member of the District; Jason Goodson, Board Member of the District; and Shannon Stolle, Board Member of the District.

them and began attending a private school in April 2021, before Plaintiffs even filed this action.

Under Article III of the Constitution, federal courts may adjudicate "only actual, ongoing cases or controversies." *Whitfield v. Thurston*, 3 F.4th 1045, 1047 (8th Cir. 2021) (quoting *SD Voice v. Noem*, 987 F.3d 1186, 1189 (8th Cir. 2021)); *McGehee v. Neb. Dep't of Corr. Servs.*, 987 F.3d 785, 787 (8th Cir. 2021) ("[T]he existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."). The issue here is Plaintiffs' standing.[4] "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 333 (2006) ("Article III standing . . . enforces the Constitution's case-or-controversy requirement."). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.[5]

Here, the Court finds that Plaintiffs' Third Amended Complaint does not provide facts that plausibly allege she has standing to bring this declaratory judgment claim because nothing therein shows that issuing the declaratory judgment—a favorable

---

[4] Given that Mary Doe did not attend one of the District's schools when Plaintiffs filed this action, or when they filed the Third Amended Complaint, the issue here is standing. It involves Plaintiffs' "requisite personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68, n.22 (1997))).

[5] Federal jurisdictional elements, like standing, "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

judicial decision for them—would redress any injury. That is, if the Court issued the requested declaratory judgment, it would have no effect on Mary or Jane Doe because Mary no longer attends any of the District's schools. Doc. [153] ¶ 82; *see also Doe v. Liberty Univ., Inc.*, 635 F. Supp. 3d 447, 454 (W.D. Va. 2022) (finding plaintiff lacked standing to seek the requested injunctive relief "because she no longer attends" the defendant-school and had not "stated intent to return"); *cf. Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) ("A student's graduation moots claims for declaratory and injunctive relief.").

Since Mary Doe no longer attends one of the District's schools, Plaintiffs have failed to "demonstrate their personal stake" in this claim. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *accord* Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). The Court therefore will grant the District's Motion to Dismiss and dismiss this declaratory judgment claim against it.

  b. Count V

In Count V, Plaintiffs allege that the members of the District's Board of Education were negligent per se when they breached their duty "to purchase, implement and monitor software filtering systems technology of sexual content through internet programs" in violation of CIPA and NCIPA. Doc. [153] ¶ 130; *see also Elkins v. Acad. I, LP*, 633 S.W.3d 529, 537 (Mo. Ct. App. 2021) (explaining Missouri courts recognize a cause of action of negligence per se, which is "ordinary negligence that results from the violation of a statute"). All Defendants in Count V seek dismissal of this negligence per

se claim on the ground of official immunity under Missouri law, which "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008); *accord State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019).

Plaintiffs counter that Defendants lack official immunity under Missouri law because this claim falls under a narrow exception to official immunity, liability for the performance of a ministerial duty. *See Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir. 2017) (applying Missouri law). A ministerial duty "is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment or opinion concerning the propriety or impropriety of the act to be performed." *Kanatzar*, 588 S.W.3d at 191 (internal quotations and alterations omitted).

Any duties imposed under CIPA and NCIPA plainly are not "ministerial" as the term is used in Missouri law. First, contrary to what Plaintiffs maintain, *see* Doc. [153] ¶ 128; *accord id.* ¶ 125, CIPA does not necessarily require the District to purchase and implement filtering and monitoring systems. With CIPA, Congress "exercised its Spending Power" by specifying conditions on the receipt of federal funds. *See United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 203 n.2 (2003) (plurality opinion). As a mere exercise of its Spending Power, Congress provided "mild encouragement" to schools to utilize monitoring and filtering systems that they may otherwise choose not to utilize. *See South Dakota v. Dole*, 483 U.S. 203, 211 (1987). But whether and how to

use such systems remains the prerogative of school boards.[6] *See id.* at 211–12; *see also* 47 U.S.C. § 254(h)(5)(B). CIPA and NCIPA apply only to schools or districts that choose to "receive[] discounts for Internet access and internal connections services under the federal universal service support mechanism for schools and libraries." 47 C.F.R. § 54.520(b); *accord* 47 U.S.C. § 254(h)(5)(A)(i). Nowhere did Plaintiffs plead *facts* that show that the District voluntarily participated in the program at the time at issue in Count IV, which, in turn, would have required the District to adopt the filtering measures.[7]

Regardless, even if the District voluntarily participated such that it was required to implement the measures, "[a]n act is not ministerial simply because [an] official was commanded to perform the act." *Davis v. Buchanan Cnty.*, 11 F.4th 604, 630 (8th Cir. 2021) (applying Missouri law). CIPA and NCIPA provide "room [] for variation" in how to implement them. *See Kanatzar*, 588 S.W.3d at 191. Implementing them is therefore, by definition, not a ministerial duty. *Id.* CIPA requires participating schools to "enforc[e] a policy of Internet safety" that "protects against access" through computers to "visual depictions" that are "obscene," "child pornography," or "harmful to minors." 47

---

[6] Indeed, even if a school voluntarily participates in the program, and therefore takes on the requirements to implement the filtering measures, Congress provided that noncompliance by the school will result in the need for the noncompliant school to reimburse the funds and discounts it received; the remedy is not forced implementation of filtering measures on the school. *See* 47 U.S.C. § 254(h)(5)(F)(ii) (requiring schools that "knowingly fail[] to ensure the use of its computers in accordance" with the requirements "shall reimburse any funds and discounts received under this subsection").

[7] The closest the Third Amended Complaint comes is quoting from a policy from January 2017, which the Complaint attributes to the District, that states the District will "comply with the *applicable* provisions of the Children's Internet Protection Act (CIPA), Children's Online Privacy and Protection Act (COPPA), and the Neighborhood Internet Protection Act (NCIPA)." Doc. [153] ¶ 72 (emphasis added). This allegation does not plausibly show that the District was participating in the program, especially at the time at issue here. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

U.S.C. § 254(h)(5)(B)(i).  NCIPA similarly requires participating schools and libraries to "adopt and implement an Internet safety policy that addresses" numerous things, like, for example, "unauthorized disclosure, use, and dissemination of personal identification information regarding minors." *Id.* § 254(*l*)(1)(A).

A mandate that says adopt and implement *a* policy on "Internet safety" is quintessentially discretionary.  Nowhere does CIPA or NCIPA provide *how* schools should implement it.  That is, the statute does not set out the technological process by which schools are to actually block or filter anything.  What is more, CIPA leaves immense discretion with schools to determine what they must block.  Take, for instance, the determination of whether material is "harmful to minors."  To qualify as "harmful to minors," the image must, "taken as a whole and with respect to minors, appeal[] to a prurient interest in nudity, sex, or excretion" and "taken as a whole, lack[] serious literary, artistic, political, or scientific value as to minors."  *Id.* § 254(h)(7)(G).  That quite plainly requires "judgment or opinion" and certainly provides "room [] for variation."  *See Kanatzar*, 588 S.W.3d at 191; *accord Southers*, 263 S.W.3d at 619 (noting the official immunity doctrine is intended to protect "discretionary decisions that require professional expertise and judgment").  CIPA and NCIPA's requirements therefore are not "ministerial" as the term is used in Missouri law.

CIPA leaves it to school officials to determine how and what, exactly, to filter.  NCIPA does likewise.  Assuming without deciding that a school or district official's failure to adopt or implement a sufficient policy under CIPA or NCIPA could form the basis of a claim for negligence per se under Missouri law, Missouri law quite clearly

would provide official immunity. The Court therefore will grant the individual Defendants' Motions to Dismiss and dismiss this claim against them. Given that this claim is the only one against them, the Court will dismiss them from this action altogether.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wentzville R-IV School District's Motion to Dismiss, Doc. [167], is **GRANTED**. Count IV of the Third Amended Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Erin Abbott, Betsy Bates, Dan Brice, Curtis Cain, Jason Goodson, and Shannon Stolle's Motion to Dismiss, Doc. [169], and Defendant Sandy Garber's Motion to Dismiss, Doc. [174], are **GRANTED**. Count V of the Third Amended Complaint is **DISMISSED**. The Court having dismissed the only claim against these individual Defendants, the Clerk is directed to terminate them as parties to this action on the docket.

Dated this 1st day of May 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE